CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 22 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MICHAEL STEVEN FERGUSON,           )
                                   )
        Plaintiff,                 )       Civil Action No. 7:14-CV-00702
                                   )
v.                                 )       **MEMORANDUM OPINION**
                                   )
NATIONAL FREIGHT, INC., et al.,    )
                                   )       By: Hon. Glen E. Conrad
        Defendants.                )       Chief United States District Judge
                                   )
                                   )

In this diversity action, plaintiff Michael Steven Ferguson asserts negligence claims against defendants National Freight, Inc. ("NFI") and Manuel Torres, arising from a collision between Ferguson's 1989 Dodge Ram D350 rollback tow truck (the "rollback") and a commercial tractor-trailer driven by Torres. The case is presently before the court on Ferguson's motion to strike defendants' expert and motion for partial summary judgment, as well as defendants' first motion in limine. For the following reasons, the motion to strike will be granted in part and denied in part, the motion for partial summary judgment will be denied, and the motion in limine will be taken under advisement.

## Background

On or about the evening of July 30, 2013, a 2000 Oldsmobile containing six passengers was traveling northbound on Interstate 81 ("I-81") in Botetourt County, Virginia. After the vehicle suffered a flat tire, the driver pulled over into the right-hand shoulder lane. One of the passengers then called Michael Steven Ferguson, a citizen of Virginia, and asked if he could tow the vehicle on his rollback. Ferguson arrived thereafter to assist. Ferguson's mother, Sandra Ferguson, also arrived at the scene in an SUV in order to pick up some of the remaining

passengers. Ferguson loaded the vehicle onto the rollback. Both Ferguson and the SUV then merged into the right-hand traffic lane. At the same time, Manuel Torres, a citizen of Florida, was driving a commercial tractor-trailer owned by NFI, a New Jersey corporation, northbound on I-81 in the right-hand traffic lane. The SUV moved out of the right-hand traffic lane and back into the right-hand shoulder lane. Torres then struck the back of Ferguson's rollback, causing him to suffer bodily injuries and property damage.

Ferguson filed this diversity action on December 22, 2014, asserting two counts of negligence against defendants. Specifically, Ferguson contends that Torres was negligent in failing to keep a proper lookout to avoid a collision, and that NFI was negligent by virtue of respondeat superior. Ferguson seeks compensatory damages in the amount of $2,000,000.00.

On February 19, 2016, Ferguson filed both a motion to strike defendants' expert and a motion for partial summary judgment. On March 3, 2016, defendants filed their first motion in limine. The three-day jury trial is currently scheduled to begin on March 30, 2016. The court held a hearing on the motions on March 15, 2016. The motions have been fully briefed and are ripe for disposition.

### Discussion

### I.  Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit

under the governing law.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Anderson, 477 U.S. at 248).

In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (internal citation and quotation marks omitted). "The court therefore cannot weigh the evidence or make credibility determinations." Id.

Ferguson has now moved for summary judgment on his negligence claims. Relying primarily on Torres' deposition testimony, he argues that it is clear from the record that Torres was negligent in failing to keep a proper lookout while driving, and that Torres' negligence solely and proximately caused Ferguson's damages. In response, defendants argue that there is conflicting evidence in the record as to the cause of the accident, which makes summary judgment inappropriate on the issue of liability. Specifically, defendants argue that a reasonable jury could find that Ferguson was contributorily negligent by entering the right-hand travel lane directly in front of Torres at a slow rate of speed.

In Virginia, the issues of negligence, contributory negligence, and proximate cause are ordinarily issues to be decided by a fact finder. Meeks v. Hodges, 306 S.E.2d 879, 881 (Va. 1983). "Therefore, a jury should weigh the evidence, determine the credibility of witnesses, and ultimately decide these issues where reasonable minds could differ about them." Kimberlin v. PM Transport, Inc., 563 S.E.2d 665, 667 (Va. 2002). It is "[o]nly when reasonable minds could not differ [that these issues become] questions of law to be decided by a court." Id.

3

Negligence is the "failure of a defendant to use ordinary care for the safety of another." Yeary v. Holbrook, 198 S.E. 441, 450 (Va. 1938). The Supreme Court of Virginia has held that a driver has "a duty to look with reasonable care and to heed what a reasonable lookout would have revealed." Reams v. Doe, 372 S.E.2d 405, 406 (Va. 1988). "[T]he duty is to look with reasonable care, not an absolute duty to discover by looking, unless the thing to be looked for is in such plain view that looking with reasonable care was bound to have discovered it." Oliver v. Forsyth, 58 S.E.2d 49, 51 (Va. 1950); see also Yellow Cab Co. v. Eden, 16 S.E.2d 625, 631 (Va. 1941 ("The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same."). If a driver fails to use reasonable care to maintain a proper lookout, he is negligent. Litchford v. Hancock, 352 S.E.2d 335, 337 (Va. 1987); see id. ("In the discharge of his duties, a driver is required to use ordinary care to observe other vehicles ..., to see what a reasonable person would have seen, and to react as a reasonable person would have reacted under the circumstances to avoid collision.").

Applying these principles, and viewing the evidence in the light most favorable to Torres, the court concludes that the negligence claims must be decided by a jury. The evidence is in dispute as to events leading up to the collision. Whereas Ferguson and others testified that Torres failed to observe the rollback until he collided with it, Torres asserted that Ferguson suddenly cut in front of him without sufficient time for him to avoid a collision. Furthermore, while some witnesses testified that all three lights on the rollback were activated by the time Ferguson merged into the right-hand travel lane, Torres claimed that he did not observe the rollback until seconds before the collision. Finally, the evidence is also in dispute as to the speed of the vehicles prior to the collision, how close the vehicles were when Ferguson entered the right-hand

travel lane, and whether Torres could have avoided the collision by moving into an adjacent lane.

Based on these and other factual disputes, the court is unable to conclude, as a matter of law, that Torres was negligent. The court believes that reasonable minds could differ as to whether Torres was negligent in failing to keep a proper lookout and whether any such negligence was a proximate cause of the accident. Moreover, the court is of the opinion that there exists a genuine issue of material fact as to Torres' claim of contributory negligence. The majority of the evidence in this case will consist of witness testimony. As explained above, a jury should weigh this evidence and determine the credibility of such witnesses. Accordingly, Ferguson's motion for partial summary judgment will be denied.

## II.    <u>Motion to Strike Defendants' Expert</u>

Defendants have designated Heath C. Spivey, MS, PE, as an expert in accident reconstruction and forensics. Ferguson moves to exclude certain portions of Spivey's testimony to be offered at trial.

To be admissible under Rule 702 of the Federal Rules of Evidence, expert testimony must be both reliable and relevant. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 591 (1993); <u>see also</u> <u>United States v. Crisp</u>, 324 F.3d 261, 268 (4th Cir. 2003) ("[The] touchstones for admissibility under <u>Daubert</u> are two: reliability and relevancy."). Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

5

Fed. R. Evid. 702. Daubert also sets forth a number of non-exclusive, non-dispositive factors for courts to consider in weighing motions to exclude expert testimony. These include: "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." Stoots v. Werner Co., No. 7:04cv531, 2005 WL 3547122, *1 (W.D. Va. Dec. 28, 2005) (citing Daubert, 509 U.S. at 592-94); see also Jeong v. Honda Motor Co., Ltd., 1998 WL 35425781, at *4 (W.D. Va. Apr. 24, 1998) ("In Daubert, the Supreme Court stated that a trial court performing the 'gatekeeping' function over the admission of scientific evidence pursuant to Rule 702 must use a two-prong query in determining the reliability and relevance of the proposed scientific evidence. First, the trial court must determine whether the methodology is scientifically valid."). The trial court must also determine whether the reasoning or methodology of the testimony supports the conclusion. Daubert, 509 U.S. at 591. In other words, there must be a "fit" between the methodology used and the conclusion of the expert witness. Id.; see also Jeong, 1998 WL 35425781, at *4.

In addition to the above factors, courts must also ensure that expert opinions "are based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999) (emphasis in original); see also Tyger Constr. Co., Inc. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994) (finding that expert opinions that are "based on assumptions which are speculative and are not supported by the record" may be excluded). Furthermore, "[a] valid scientific theory misapplied because of the lack of sufficient factual foundation cannot be admitted because it does not assist and, indeed, may ultimately

6

confuse the fact finder." Smithers v. C & G Custom Module Hauling, 172 F. Supp. 2d 765, 771 (E.D. Va. 2000). Courts have "broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). The proponent of the testimony bears the burden of proving by a preponderance of proof that the evidence is admissible under this standard. See Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

In the instant case, defendants seek to have Spivey testify as to the content of the data obtained from the Event Data Recorder ("EDR") on Torres' tractor-trailer, in order to establish the speed of the tractor-trailer at specific times. By applying that data to existing research regarding statistical analysis of EDR data, defendants indicate that Spivey will then offer his opinions as to when the collision occurred, as well as the lag time between Torres' application of the brakes and the time of impact. Spivey also intends to testify as to the speed of the rollback at the time of the impact, based on the EDR data and his observation of the damages sustained by the vehicles involved in the collision. Ultimately, Spivey will opine that Torres responded to a slow-moving rollback, but he was unable to avoid the collision based on the closing speed between the two vehicles. In his motion to strike, Ferguson seeks to exclude Spivey's testimony regarding the tractor-trailer's speed, the moment of impact, Torres' response prior to the collision, and the speed of the rollback at the time of the collision, arguing that Spivey's opinions are unreliable and lack sufficient foundation. Ferguson does not challenge Spivey's testimony as to content of the EDR data.

The court finds that defendants have sustained their burden as to the admissibility of Spivey's opinions regarding the content of the EDR data and the speed of the tractor-trailer at

various times prior to the collision. With respect to the Rule 702 factors, the court believes that Spivey's testimony will help the jury interpret the EDR data and determine the speed of Torres' tractor-trailer at the time of the collision. Torres has previously testified that he was traveling between 55 mph and 60 mph prior to the collision, and Spivey's testimony will assist the jury in weighing such evidence. The court also believes that defendants have demonstrated that Spivey's testimony is based on sufficient data, and that Spivey has applied reliable principles and methods to the facts of the case. Courts have previously relied on this type of data to determine a vehicle's speed at certain points in time. See, e.g., Pracht v. Saga Freight Logistics, LLC, No. 3:13-CV-529, 2015 WL 5918037, at *1 (W.D.N.C. Oct. 9, 2015) (noting that, through data obtained from the tractor-trailer's electronic control modules, "it was established that [defendant] was traveling 24.5 miles per hour at the time of the collision"). Thus, the court has no difficulty finding that EDR data allows an expert to opine as to a vehicle's speed at any given point in time. Accordingly, Spivey's testimony as to the contents of the EDR data and the speed of Torres' tractor-trailer at various times prior to the collision are admissible.

Regarding Spivey's proposed opinions as to the point in time when the collision occurred and the speed of the rollback at the time of impact, the court finds that defendants have not sufficiently established the reliability of Spivey's methodology in order to show that his testimony will aid the jury. In general, a court must exclude an expert's testimony when it "is connected to existing data only by the ipse dixit of the expert." Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997). In order to determine the moment of impact based on the EDR data, Spivey relies on a study by William Messerschmidt and Jeffrey Muttart, in which the researchers found that a decrease of fifteen feet per second or more within a period of one second is indicative of a crash. The study also provided a range of probability rates that a given change in speed from 13

8

feet per second to 26 feet per second is indicative of a crash. Based on this information, Spivey opined, to an 85% probability, that the collision occurred when Torres' speed was between 55 mph and 44.5 mph. From this conclusion, Spivey then concluded that the impact speed of the rollback must have been less than 55 mph and most likely significantly less than 55 mph.

Even if the court could assume that defendants have demonstrated that the theories in this study are "well-tested, commented upon, verified and accepted … the [c]ourt does not have sufficient confidence that such theories were properly applied by the [] expert to the facts of this case in order to admit his various opinions[.]" Smithers, 172 F. Supp. 2d at 771. As was also the case in Smithers, the court is concerned that Spivey does not consider several variables that may affect a vehicle's change in speed. The United States Court of Appeals for the Fourth Circuit has previously found that an expert's testimony regarding the speed of the defendant's vehicle was inadmissible because the expert failed to consider certain material factors, including the weight of each vehicle, the incline of the roadway, the condition of the roadway, and the condition of the vehicle's tires. Kale v. Douthitt, 274 F.2d 476, 482-83 (4th Cir. 1960). In the instant case, the court believes that the same material factors identified in Kale may affect the decline in Torres' speed once he applied his brakes. Spivey admits in his report that he was unable to determine the exact location on I-81 where the collision occurred. This deficiency creates doubt as to the reliability of Spivey's testimony, as the court believes that Spivey could not have considered these material factors without knowing where the accident occurred. The study itself even indicates that "this method should be used, whenever possible, along with evidence from the accident scene and vehicles." Defs.' Opp. to Mot. to Strike Ex. B at 7, Docket No. 31-2. Even if these factors "may not have made a difference in the ultimate outcome of his analysis" as to the exact moment of impact, Spivey's failure to consider them, or offer an explanation for his

9

failure, creates "enough doubt as to the overall reliability of [his] ultimate opinions as to render them inadmissible." Smithers, 172 F. Supp. 2d at 771; see also Whittaker v. Van Fossan, 297 F.2d 245, 246 (4th Cir. 1961) ("Even if [the expert] were competent to render the opinion he ventured, it was not receivable if he failed to take into account every relevant factor."); Kale, 274 F.2d at 483 ("Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors."). Finally, the court notes that Spivey's report sets forth no meaningful explanation as to how the damages sustained by the various vehicles involved in the collision led to his conclusion as to the rollback's speed at the moment of impact. As such, the court believes that there are too many missing variables to permit the expert to give his opinion as to the rollback's speed, and that his opinion is no more than mere inadmissible speculation. Therefore, the court concludes that Spivey's opinion as to when the collision occurred and the speed of the rollback are inadmissible.

The court is also concerned with the admissibility of Spivey's opinions regarding Torres' breaking time prior to impact. In essence, Spivey based his conclusion on a separate study, which he co-authored, in which the researchers determined that there was an average lag time of 1.09 seconds between a brake application and a recorded speed change in the corresponding EDR data. From that study, Spivey concluded that it is likely that Torres applied his brakes at least one second prior to the hard break event and at least two seconds prior to impact. Ultimately, Spivey opined that Torres responded to a slow-moving rollback and could not have avoided a collision.

The court believes that defendants have not sufficiently shown the reliability of Spivey's process for calculating Torres' braking response prior to the collision. Defendants have not indicated that this study has been subject to peer review, is generally accepted within the scientific community, or has a known rate of error. Most importantly, the court is of the opinion

that defendants have not sufficiently shown that Spivey's conclusions are supported by the study on which Spivey relied. First, the study's results were obtained from the Detroit Diesel Electronic Controls in a 2006 Freightliner Columbia tractor-trailer. As such, the study provides that "results obtained from vehicles equipped differently or having different [Electronic Control Module] software versions[] may behave differently." Defs.' Opp. to Mot. to Strike Ex. C at 12, Docket No. 31-3. In the instant case, Torres was driving a 2013 Freightliner Cascadia tractor-trailer. While the tractor-trailer was equipped with a Detroit Diesel engine, Spivey did not indicate whether it is the same ECM software used in the study. Thus, Spivey's conclusions as to Torres' response time prior to impact are unreliable and inadmissible. See Thorpe v. Commonwealth, 292 S.E.2d 323, 326 (Va. 1982) ("Results of experiments are not admissible in evidence unless the tests were conducted under conditions which were the same or substantially similar in essential particulars to those existing at the time of the accident.").

Second, the court finds that Spivey's opinion that Torres identified and responded to Ferguson's vehicle, but was unable to avoid a collision because of the closing speed between the two vehicles, is equally problematic. Spivey does not indicate what scientifically-accepted method he used in order to reach this conclusion. Again, Spivey admits that he was unable to determine the exact spot where the collision occurred on I-81. Much the same as in Smithers, "[n]o one can determine the earliest point when [the plaintiff] must have or could have seen the defendant vehicle." 172 F. Supp. 2d at 772. Moreover, the court believes that there are too many missing variables—for example, the curve of the highway, the incline of the highway, whether the rollback's lights were activated—in order for Spivey to reliably and accurately determine the earliest point that Torres could have seen the rollback and responded accordingly. As such, he has offered no scientific basis for his conclusion that Torres was unable to avoid the collision.

11

Due to these shortcomings, the court concludes that Spivey's opinion as to Torres' braking time prior to the impact is inadmissible.

### III.    Motion in Limine

In their motion in limine, defendants seek to exclude certain evidence at trial that they believe is irrelevant and prejudicial. For reasons stated during the hearing, the court will take the motion under advisement until the parties' pre-trial conference, which is currently scheduled for March 23, 2016.

### Conclusion

For the foregoing reasons, Ferguson's motion for partial summary judgment will be denied and his motion to strike defendants' expert will be granted in part and denied in part. The court will deny Ferguson's motion to strike with respect to Spivey's opinion as to the content of the EDR data and Torres' speed at various times prior to the collision. However, the court will grant Ferguson's motion to strike as to Spivey's conclusions regarding the exact moment of impact, the speed of the rollback, and Torres' braking time prior to the collision. Finally, defendants' motion in limine will be addressed at the court's pre-trial conference.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This ___22ᵈ___ day of March, 2016.

_____

Chief United States District Judge

12