CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 5 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MICHAEL STEVEN FERGUSON,   )
                           )
        Plaintiff,         )        Civil Action No. 7:14-CV-00702
                           )
v.                         )        **MEMORANDUM OPINION**
                           )
NATIONAL FREIGHT, INC., et al.,   )
                           )        By: Hon. Glen E. Conrad
        Defendants.        )        Chief United States District Judge
                           )
                           )

On March 31, 2016, a jury found in favor of plaintiff Michael Steven Ferguson on his claim of negligence against defendants National Freight, Inc. ("NFI") and Manuel Torres. The case is presently before the court on defendants' renewed motion for judgment as a matter of law or, in the alternative, a new trial, as well as their motion to stay execution of the judgment pursuant to Rule 62(b) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motions will be denied.

### Factual Background

On or about the evening of July 30, 2013, a 2000 Oldsmobile containing six passengers was traveling northbound on Interstate 81 ("I-81") in Botetourt County, Virginia. After the vehicle suffered a flat tire, the driver pulled over into the right shoulder lane. One of the passengers then called Ferguson, a citizen of Virginia, and asked if he could tow the vehicle on his rollback. Ferguson arrived thereafter to assist. Ferguson's mother, Sandra Ferguson, also arrived at the scene in an SUV in order to pick up some of the remaining passengers. Mrs. Ferguson parked the SUV in front of the rollback. Ferguson then loaded the disabled vehicle onto the rollback.

Both Ferguson and the SUV began to accelerate in the right shoulder lane. At trial, Ferguson testified that the lights on top of the rollback were activated. He claimed that he reached a speed of between 55 and 60 miles per hour ("MPH") before moving into the right travel lane. The rollback then merged into the right travel lane and passed the SUV, which was still in the in shoulder lane. At trial, Ferguson testified that he checked his rear-view mirrors before merging into the right travel lane and did not see any vehicles or lights approaching. One of the passengers in Ferguson's rollback, Tamara Lynskey, also testified that she did not see defendant Torres' tractor-trailer prior to impact. Soon thereafter, the SUV merged into the right travel lane.

Defendant Torres, a citizen of Florida, was driving a commercial tractor-trailer owned by NFI, a New Jersey corporation, northbound on I-81 in the right travel lane. At trial, the evidence revealed that Torres was driving between 61 and 62 MPH, which was below the posted speed limit of 70 MPH. As the tractor-trailer approached, the SUV moved out of the right traffic lane and back into the right shoulder lane. Torres then struck the back of Ferguson's rollback, causing him to suffer bodily injuries and property damage.

### Procedural History

Ferguson filed this diversity action on December 22, 2014, asserting two counts of negligence against defendants. Specifically, Ferguson alleged that Torres was negligent in failing to keep a proper lookout to avoid a collision, and that NFI was negligent by virtue of respondeat superior.

The court denied Ferguson's motion for a partial summary judgment on the issue of defendants' liability on March 22, 2016. On March 30-31, 2016, a bifurcated jury trial was conducted on Ferguson's negligence claims against defendants. At the close of Ferguson's

2

evidence and again before the case was submitted to the jury, defendants moved for judgment as a matter of law. The court denied defendants' motions, and the jury returned a verdict in favor of Ferguson, finding that Torres was negligent and that Ferguson was not contributorily negligent. After the jury returned its liability verdict, the parties presented evidence as to the amount of damages that should be awarded to Ferguson. The jury awarded Ferguson damages in the amount of $300,000.00, including pre-judgment interest on the full amount at a rate of 6.25% from July 30, 2013.[1]

The case is now before the court on defendants' renewed motion for judgment as a matter of law or, in the alternative, a new trial, as well as their motion to stay execution of the judgment while the court considers the post-trial motion. The court held a hearing on the motions on May 19, 2016. The motions have been fully briefed and are ripe for disposition.

**Discussion**

**I.    Defendants' Renewed Motion for Judgment as a Matter of Law**

Defendants have again moved for judgment as a matter of law on both Ferguson's negligence claim and their claim that Ferguson was contributorily negligent. Rule 50 of the Federal Rules of Civil Procedure permits a party to renew its motion for judgment as a matter of law following the jury's verdict. Fed. R. Civ. P. 50(b). The court may grant such motion only if it finds that "a reasonable jury would not have had a legally sufficient evidentiary basis to find for the [non-moving] party on [a particular] issue." Fed. R. Civ. P. 50(a)(1). The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001). It cannot substitute its judgment for that of the jury by reweighing the evidence or making credibility determinations.

---

[1]    The court notes that the Virginia statutory cap on pre-judgment interest is 6%. Accordingly, the court will amend the judgment to reflect this amount.

3

Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996). The court should "accord utmost respect to jury verdicts and tread gingerly in reviewing them." Id. Thus, when a jury has deliberated and returned a verdict in favor of the non-movant,

> a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.

Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (internal citation and quotation marks omitted); see also Bank of Montreal v. Signet Bank, 193 F.3d 818, 831 (4th Cir. 1999) (finding that judgment as a matter of law is proper only if the evidence "supports only one reasonable conclusion as to the verdict.").

Negligence is the "failure of a defendant to use ordinary care for the safety of another." Yeary v. Holbrook, 198 S.E. 441, 450 (Va. 1938).[2] The Supreme Court of Virginia has held that a driver has "a duty to look with reasonable care and to heed what a reasonable lookout would have revealed." Reams v. Doe, 372 S.E.2d 405, 406 (Va. 1988). "[T]he duty is to look with reasonable care, not an absolute duty to discover by looking, unless the thing to be looked for is in such plain view that looking with reasonable care was bound to have discovered it." Oliver v. Forsyth, 58 S.E.2d 49, 51 (Va. 1950); see also Yellow Cab Co. v. Eden, 16 S.E.2d 625, 631 (Va. 1941 ("The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same."). If a driver fails to use reasonable care to maintain a proper lookout, he is negligent. Litchford v. Hancock, 352 S.E.2d 335, 337 (Va. 1987); see id. ("In the discharge of his duties, a driver is required to use ordinary care to observe other vehicles..., to see what a reasonable person would

---

[2]      In this diversity case, the court must apply Virginia law. Price v. Glosson Motor Lines, Inc., 509 F.2d 1033, 1035 (4th Cir. 1975).

4

have seen, and to react as a reasonable person would have reacted under the circumstances to avoid collision.").

In this case, the jury found in favor of Ferguson on the issue of whether Torres was negligent and whether his negligence was the proximate cause of the accident. In moving for judgment as a matter of law in their favor, defendants argue that the jury's findings were based on insufficient evidence. Defendants contend that the evidence established that Torres took every reasonable step to avoid the collision. Specifically, defendants note that Torres testified that he applied the brakes as soon as he saw Ferguson's rollback truck, that he was unable to move into the left travel lane because there was another vehicle in the lane, and that he was unable to move into the right shoulder lane because Mrs. Ferguson's SUV was there.[3] Even though Trooper C.D. Price did not find any visible skid marks on the road, defendants argue that there was no evidence to refute Torres' claim that he applied his brakes prior to the collision, and that he was unable to move out of the right travel lane. Finally, defendants believe that, even if Torres saw Ferguson's rollback in the right shoulder lane, he could not have anticipated that Ferguson would pull out directly in front of him. See Reilly v. Dunnavant, 200 F.2d 213, 215 (4th Cir. 1952) ("[O]ne is not required to anticipate that another may, for some reason, be unable to exercise ordinary care for his own safety..."). Overall, defendants contend that the evidence presented at trial did not show that Torres negligently operated his tractor-trailer.

Based on the evidence presented at trial, the court is convinced that there was a legally sufficient evidentiary basis for the jury's finding on the issue of Torres' negligence. First, Teresa Lynskey, who was in Mrs. Ferguson's SUV at the time of the accident, testified that Ferguson's rollback was fully in the right travel lane at the time of the accident, that the rollback's emergency lights were activated when it merged into the right travel lane, that Mrs. Ferguson's

---

[3]     Torres was not present for trial, and his testimony was by way of deposition.

5

SUV had to move back into the shoulder lane to avoid a collision with Torres' tractor-trailer, and that she did not hear Torres' horn or brakes prior to the collision. Teresa Lynskey, however, could not testify as to the exact speed of the vehicles prior to the accident—although she did describe Ferguson's speed as similar to the speed at which one merges onto the highway—or how long the SUV was in the right travel lane before it merged back into the right shoulder lane. Second, Tamara Lynskey, Teresa's sister, testified that she was in the rollback at the time of the collision, that all of the rollback's lights were on, that the rollback was fully in the right travel lane, and that there was no prior warning from the tractor-trailer prior to impact. Overall, Tamara Lynskey did not believe that Ferguson did anything wrong prior to the accident. Third, Trooper Price testified that he observed impact damage straight across the back of Ferguson's rollback and across the front of Torres' tractor-trailer, fluid in the middle of the right travel lane, and no skid marks near the site of the collision.[4] Based on his observations, Trooper Price believed that the impact occurred while Ferguson was fully within the right travel lane, as opposed to a time when Ferguson was in between the right travel and shoulder lanes. He also testified that Torres told him that Ferguson came out into the road in front of him, and that he could not avoid hitting him. Trooper Price noted that there was nothing in that part of I-81 that would have obstructed a driver's view, and that Torres did not suggest that there was anything about the rollback that prevented him from seeing it. Overall, Trooper Price indicated that he could find no reason for Torres to drive into the back of the rollback. Finally, Ferguson testified on his own behalf regarding the events on the night of the accident. He indicated that he activated all of his emergency lights, turned on his left turn signal, and did not see any cars approaching in the right travel lane prior to when he entered the highway.

---

[4]     While Trooper Price was scheduled to testify at trial, he was unable to attend. By agreement of the parties, certain portions of his discovery deposition were read to the jury.

6

Ferguson also played a video recording of Torres' deposition to the jury as part of his case-in-chief. During the deposition, Torres testified that he witnessed the rollback and the SUV enter the right travel lane at a very close distance to him. He indicated that he was driving between 55 and 62 MPH at the time of the accident and believed that the rollback was traveling between 30 to 35 MPH at the time it merged into the right travel lane. He could not recall, however, if the rollback had its lights on, but he testified that the tractor-trailer's headlights were on at the time. Torres did not provide a detailed explanation as to what happened prior to the collision but, instead, testified that the events happened very quickly, and that he could not avoid colliding with the rollback. During cross-examination, Torres admitted that the impact of the tractor-trailer with the rollback was square and even, and that the rollback was completely in the right travel lane at the time of the accident.

During the liability phase of the trial, defendants presented testimony of Heath Spivey, an expert in accident reconstruction, investigation, and analysis. Spivey reviewed the physical evidence at the scene, inspected the tractor-trailer, and noted the information from the tractor-trailer's electronic data recorder (EDR). At trial, Spivey opined that Torres applied his brakes when he was traveling between 55 and 61 MPH. He testified that the application of brakes does not always create skid marks on the road. During cross-examination, Spivey admitted that he could not opine as to whether the rollback's lights were activated at the time of the accident. Though he did opine that Torres applied the accelerator one second prior to the steep deceleration period, and that the drop in Torres' speed could have occurred when he collided with Ferguson's rollback.

In the court's view, despite defendants' arguments that there was no evidence that Torres was operating his tractor-trailer in a negligent fashion, a reasonable jury could have found that

7

Torres was negligent in failing to keep a proper lookout and in failing to maintain a safe distance between his tractor-trailer and the rollback. Furthermore, a reasonable jury could have found that Ferguson was fully within the right travel lane at the time of the accident based on the testimony from the Lynskeys and Trooper Price, as well as Torres' own admission. This is inconsistent with Torres' version of what happened prior to the collision, specifically that Ferguson merged into the right travel lane a short distance in front of him and Torres was therefore unable to avoid colliding with the rollback. In addition, Spivey's testimony only confirmed Torres' assertion that he was driving at a speed well below the speed limit. It is not the court's function on a motion for judgment as a matter of law to reweigh the evidence or to make credibility findings. Instead, disposition of the motion turns on whether the jury's finding is supported by a legally sufficient evidentiary basis. As the court believes the jury's verdict is so supported, it follows that defendants are not entitled to judgment as a matter of law on Ferguson's negligence claim.

Furthermore, based on the evidence presented at trial, the court is also convinced that there was a legally sufficient evidentiary basis for the jury's finding on the issue of Ferguson's contributory negligence. A reasonable jury could have found that Ferguson did not see any approaching vehicles in the right travel lane, that he had all of his emergency lights and his left turn signal activated, and that he was driving at a reasonable speed in the right shoulder lane prior to merging onto the highway. Again, the testimony from the Lynskeys, Trooper Price, and Ferguson himself confirmed this version of the events. Only Torres' testimony presented a different story. The jury, however, was free to weigh the credibility of the witnesses and reach its own conclusion as to what occurred. Therefore, the court is convinced that the jury's finding is supported by a legally sufficient evidentiary basis. Accordingly, defendants are not entitled to judgment as a matter of law that Ferguson was contributorily negligent.

8

As the court previously noted in denying defendants' motion for summary judgment, the issues of negligence, contributory negligence, and proximate cause are ordinarily issues to be decided by a fact finder. Meeks v. Hodges, 306 S.E.2d 879, 881 (Va. 1983). "Therefore, a jury should weigh the evidence, determine the credibility of witnesses, and ultimately decide these issues where reasonable minds could differ about them." Kimberlin v. PM Transport, Inc., 563 S.E.2d 665, 667 (Va. 2002). It is "[o]nly when reasonable minds could not differ [that these issues become] questions of law to be decided by a court." Id. Here, it is clear from the evidence presented at trial that reasonable minds could differ as to Torres' negligence and Ferguson's contributory negligence. Accordingly, defendants' renewed motion for judgment as a matter of law will be denied.

## II.     Defendants' Motion For a New Trial

Defendants have alternatively moved for a new trial. A motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure is governed by a different standard than a motion for judgment as a matter of law. Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). When considering a motion for new trial under Rule 59(a), the court is "permitted to weigh the evidence and consider the credibility of witnesses." Id. The court will grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice." Id. "The decision to grant or deny a new trial is within the sound discretion of the district court...." Id.

In moving for a new trial, defendants advance two arguments. First, defendants maintain that the court erred in admitting certain portions of Trooper Price's testimony. Second, defendants contend that the court improperly limited defense counsel's cross-examination of the Lynskeys regarding their civil cases against Ferguson. The court will address each argument in

9

turn.

### a. **Trooper Price's Testimony**

As to Trooper Price's testimony, the court concludes that it did not err in admitting certain portions of his deposition testimony and, even if the court did err, such error was harmless. First, the court believes that Trooper Price's testimony was admissible lay opinion testimony. Rule 701 of the Federal Rules of Evidence permits a lay witness to give an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The key distinction between lay and expert opinions is that a lay opinion <u>must</u> be based on personal knowledge, whereas expert opinion may be based on firsthand observation and experience. <u>United States v. Perkins</u>, 470 F.3d 150, 155-56 (4th Cir. 2006); <u>MCI Telecommc'n Corp. v. Wanzer</u>, 897 F.2d 703, 706 (4th Cir. 1990) (finding that Rule 701 permits lay witnesses to "offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived"). In addition, an expert witness "must possess some specialized knowledge or skill or education that is not in the possession of the jurors." <u>Certain Underwriters at Lloyd's, London v. Sinkovich</u>, 232 F.3d 200, 203 (4th Cir. 2000). As such, an expert witness may answer hypothetical questions and offer opinions not based on first-hand knowledge. <u>Id.</u>

Here, the admitted portions of Trooper Price's deposition merely outlined his investigation of the accident and his personal observations of the scene. The court believes that such testimony was rationally based on Trooper Price's first-hand knowledge. Specifically, Trooper Price asserted that he could not find evidence of any skid marks, and that he did not see "any evidence in the roadway that [Torres] had made an attempt to hit his brakes." Price Dep.

10

19:22-24, Docket No. 90-3. Furthermore, he also stated that "[t]he impact was straight on ... straight, square impact across the front of the truck ... straight, square impact across the back of the rollback." Id. at 19:24. Trooper Price testified that he also observed radiator fluid from Torres' tractor-trailer in the middle of the right travel lane. Based on these observations, Trooper Price believed that that the impact occurred when Ferguson was in the middle of the right travel lane, and that Ferguson had "established his lane[.]" Id. at 22:14. Trooper Price testified that Ferguson "got out in the road and established his lane and was proceeding north...so he was out in the road a distance. It was not out in the road, boom. It was not that." Id. at 23:1-3, 5-6. Despite defendants' argument to the contrary, in the court's view, this testimony merely represented Trooper Price's assessment of the physical evidence, as opposed to speculation or opinion as to the distance between the vehicles or the period of time between Ferguson's entry onto the roadway and the collision. Based on the physical evidence at the scene of the accident, Trooper Price simply determined that the impact occurred when Ferguson was completely within the right travel lane. The alternative scenario, which Trooper Price apparently ruled out, was that Ferguson was in the process of merging into the right travel lane when Torres collided with him. Therefore, the court believes that these "observations were 'common enough and require[d] such a limited amount of expertise ... that they can, indeed, be deemed lay witness opinion[s].'" Perkins, 470 F.3d at 156 (quoting United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995)). In addition, Rule 701 "does not interdict all inference drawing by lay witnesses." Perkins, 470 F.3d at 156 (quoting United States v. Santos, 201 F.3d 953, 963 (7th Cir. 2000). As such, it was proper for the court to admit portions of Trooper Price's deposition that were based on his personal knowledge and investigation of the scene of the accident. As to defendants' assertion that the jury could have misconstrued the significance of Trooper Price's testimony, counsel was

11

free to argue that the trooper offered no opinion as to what caused the accident.

Furthermore, the court believes that the cases cited by defendants are distinguishable from the instant case. First, in Sinkovich, a lay witness's testimony in a case concerning a boat accident consisted of mainly responding to hypothetical questions that required specialized knowledge to answer. 232 F.3d at 203. The Fourth Circuit, however, noted that the witness "did not have any first-hand knowledge of the accident nor were his conclusions ones that a normal person would form based upon his perceptions." Id. Instead, his conclusions could only have been drawn by an "experienced seaman or marine engineer." Id. Therefore, the Court held that the district court erred in admitting the witness's testimony. Id. Here, in those portions of the deposition admitted by the court, Trooper Price did not answer hypothetical questions, provide answers based on specialized knowledge, or offer opinions as to the cause of the accident. Again, Trooper Price personally investigated the accident scene and concluded that Ferguson was fully within the right travel lane based on the damages sustained by the vehicles, the radiator fluid in the middle of the lane, and the location of the vehicles post-collision. Unlike in Sinkovich, the court believes that an average person, without any specialized knowledge in accident reconstruction, could reach the same conclusion based on the physical evidence. In addition, Trooper Price testified that he could find no reason for Torres to collide with the back of Ferguson's vehicle. Again, the court believes that this was a reasonable conclusion based on his investigation of the scene of the accident and was not based on any specialized knowledge beyond that possessed by an average person.

Second, in United States v. Johnson, the government called an agent from the Drug Enforcement Administration ("DEA") to testify regarding a wiretap investigation of the defendant. 617 F.3d 286, 289 (4th Cir. 2010). At trial, the agent was asked to interpret four

12

phone calls between the defendant and a cocaine supplier based on his experience as a DEA agent. Id. Because the agent was not actually involved in the wiretap investigation, the Fourth Circuit found that he lacked personal knowledge that was required for him to testify as a lay witness. Id. at 293. Specifically, the Court noted that the agent "did not testify to directly observing the surveillance or even listening to all of the relevant calls in question." Id. In the instant case, Trooper Price testified based on his personal observations of the physical evidence at the scene of the accident and his personal conversations with the parties involved in the accident. Trooper Price's testimony was not based on second-hand knowledge or evidence extrapolated from someone else's reports. Therefore, the court believes that the cases upon which defendants rely are distinguishable, as Trooper Price's testimony was clearly based on his personal knowledge as the responding officer at the scene of the accident.

Finally, because Trooper Price was not designated as an expert in accident reconstruction, the court did not allow him to opine as to what caused the accident or who was at fault. In addition, the court did not admit any conclusion by Trooper Price as to the distance between the vehicles at the time of Ferguson's entry onto the roadway or as to how many seconds Ferguson was in the right travel lane prior to impact, despite defendants' characterization of his testimony. Such opinions would certainly have been based on scientific, technical, or other specialized knowledge and not on Trooper Price's personal knowledge, as he did not personally observe the accident. See id. (finding that police officers' testimony as to the reasonableness of defendant's use of force was not proper lay opinion testimony as none of the officers observed his use of force). Instead, the court believes that Trooper Price's testimony was properly limited to simple and straightforward physical findings. Accordingly, the court finds that Trooper Price's testimony was admissible under Rule 701.

13

Even if the court could find that it erred in admitting Trooper Price's testimony, such error was harmless. Rule 61 of the Federal Rules of Civil Procedure provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence...is ground for granting a new trial...." Fed. R. Civ. P. 61. The Lynskeys both testified that the rollback was established in the right travel lane at the time of the accident, although they could not estimate the distance between the vehicles at the time of the rollback's entry or the length of time that passed between the entry and the accident. They also testified that they did not hear or see Torres apply his brakes prior to impact, and that the rollback had all of its emergency lights activated at the time it entered the right travel lane. Ferguson also testified that he had all of the emergency lights on at the time of the accident and did not see any cars at the time he merged into the right travel lane. In addition, Torres admitted on cross-examination that the rollback was completely within the right travel lane at the time he collided with it, and that the impact was a square, even hit. Moreover, he did not testify that the rollback's lights were off at the time of the accident; instead, he simply could not recall one way or another. Therefore, the court believes that the jury had sufficient evidence to find in favor of Ferguson, independent of Trooper Price's testimony, and that any error in the admission of such testimony was harmless.

### b. **Cross-Examination of the Lynskeys**

As to the Lynskeys, the court concludes that it properly limited the scope of their cross-examination. A district court has "wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." United States v. Smith, 441 F.3d 254, 266 (4th Cir. 2006). During cross-examination, the Lynskeys both confirmed that they had initiated civil lawsuits in state court against Ferguson,

14

and that one of the claims in those cases was that Ferguson was negligent. Defense counsel then attempted to ask the Lynskeys about the specific allegations in those actions, as well as the resolution of those claims. The court sustained objections from Ferguson's counsel on the grounds that the Lynskeys were not attorneys and did not have the legal expertise to explain their allegations. On rebuttal, counsel for Ferguson called Rick Popp, who represented Tamara Lynskey and her son in their civil action against Ferguson. Popp testified that, in personal injury cases, it is common for attorneys to name all parties involved in an accident—who may or may not be responsible—in order to preserve their clients' claims, and that there was no liability determination against Ferguson at this time.

In order to impeach the Lynskey's testimony at trial that Ferguson was not negligent, the court believes that it was sufficient for defense counsel to confirm that the Lynskeys had filed negligence lawsuits against Ferguson. However, it would have been confusing to the jury, as well as prejudicial to Ferguson, to have allowed further testimony as to the substance and resolution of those claims. The court does not believe that such cross-examination would have been proper impeachment testimony, considering that statements made in the state court pleadings are more properly characterized as counsel's statements, and because the Lynskeys testified that they merely deferred to their attorneys regarding the content of their complaints. The court notes that defense counsel was free to argue during closing arguments that the jury should discredit the Lynskeys' testimony based on their initiation of civil actions against Ferguson in state court. Given its wide latitude for determining reasonable limits on cross-examination, the court believes that it properly restricted the scope of cross-examination of the Lynskeys as to the details of their lawsuits against Ferguson, matters as to which they had little or no understanding.

Accordingly, the court concludes that defendants are not entitled to a new trial based on either the admission of Trooper Price's deposition testimony, or the court's limitation on the scope of cross-examination of the Lynskeys. As such, the defendants' motion will be denied.

## III.     Defendants' Motion to Stay

Defendants also filed a motion to stay execution of the judgment pursuant to Rule 62(b) of the Federal Rules of Civil Procedure while the court considers their post-trial motions. As this opinion disposes of those post-trial motions, the court will deny the motion to stay as moot.

### Conclusion

For the foregoing reasons, defendants renewed motion for judgment as a matter of law or, in the alternative, motion for a new trial will be denied. Defendants' motion to stay will also be denied as moot.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 15ᵗʰ day of June, 2016.

_____
Chief United States District Judge

16